IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| CARLA COOPER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:21-cv-00104-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Carla Cooper seeks judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this case for further administrative proceedings consistent with the findings, conclusions, and recommendation set forth below.

I.  **STATEMENT OF THE CASE**

Cooper seeks disability benefits under Titles II and XVI of the SSA. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 12-1 at Tr. 34, 212-28. She applied for a period of disability and disability insurance benefits ("DIB"), as well as supplemental security income ("SSI"), in August 2019. *Id.* Her applications reported disability due to depression, anxiety, post-traumatic stress disorder (PTSD), high blood pressure, a stroke in 2015, thyroid issues, high cholesterol, and migraines. *Id.* The Commissioner denied Cooper's application initially and upon reconsideration (*id.* at 138-43, 152-53), so she requested a hearing before an administrative law judge ("ALJ"). *Id.*

at 154-55. ALJ Sylke Merchan conducted the hearing in April 2021 (*id.* at 55-81) and affirmed the Commissioner's decision. *Id.* at 31-54.

After the Social Security Appeals Council denied further administrative review (*id.* at 1), Cooper filed this action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). Cooper challenges two points on appeal: (1) whether the ALJ applied proper legal standards when assessing Cooper's functional impairments considering the medical opinions of record; and (2) whether substantial evidence supports the ALJ's determination that opinions from two of Cooper's treating healthcare professionals were unpersuasive. *See* ECF No. 14 at 5.

## II.    STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. 42 U.S.C. §§ 401-434; 1381-1383f. A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory

list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a

preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417).

The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.  ANALYSIS

The ALJ conducted the sequential evaluation. At step one, she found Cooper "has not engaged in substantial gainful activity since February 28, 2019, the alleged onset date." Tr. 36. At step two, she determined Cooper "has the following severe impairments: history of cerebrovascular accident and transient ischemic attack, hypertension, hypothyroid disorder, migraine headaches, degenerative disc disease status post microdiscectomy, major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), and history of substance abuse." *Id.* at 37. At step three, she determined those impairments do not meet or medically equal the impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* Before proceeding to step four, the ALJ assessed Cooper's RFC:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform light work as defined in 20 C.F.R. [§] 404.1567(b) and 416.967(b), except for the following limitations. The claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, stoop, balance, crouch, crawl or kneel. The claimant is limited to simple, routine, repetitive tasks with no strict production requirements and occasional changes in the work setting. The claimant can have no public contact and occasional, superficial contact with supervisors and coworkers.

4

*Id.* at 39 (cleaned up). At step four, the ALJ found Cooper "is unable to perform any [PRW]." *Id.* at 47. However, based on her RFC, the ALJ determined "jobs [] exist in significant numbers in the national economy that the claimant can perform." *Id.* By way of example, the ALJ found Cooper could work as a Photocopy Machine Operator (15,000 jobs nationally), Collator (13,000 jobs nationally), or Marker (305,000 jobs nationally). *Id.* at 48. Because she can perform those and other jobs that exist in significant numbers nationwide, the ALJ found Cooper not disabled at step five. *Id.*

Cooper says two errors mar the ALJ's evaluation. First, she contends "[t]he ALJ erred in determining the functional effect of Cooper's physical impairments based upon her lay interpretation of the evidence of record and lay medical opinion." ECF No. 14 at 16. In particular, she says the ALJ's RFC assessment is terminally flawed because the ALJ "identified no medical assessment of record that established a basis for her physical RFC finding." *Id.* Second, she contends "[t]he ALJ's reasoning for finding Dr. Bartel's and FNP Segler's medical opinions 'not persuasive' is not supported by substantial evidence." *Id.* at 21. The second argument is unavailing; the first persuades and warrants remand of this case. The undersigned addresses the unpersuasive argument first.

    **A.    The ALJ applied correct legal standards in finding Dr. Bartel's and FNP Segler's opinions unpersuasive, and substantial evidence supports that conclusion.**

Cooper takes issue with the ALJ's evaluation of opinion evidence from two of her treating medical professionals: Dr. Danny Bartel and Family Nurse Practitioner ("FNP") Ben Segler. *See* ECF No. 14 at 21-28. Cooper is correct that the ALJ found Bartel's and Segler's opinions unpersuasive. *See* Tr. 46. But she is incorrect in asserting "[t]he ALJ did not [] provide reasoning

5

supported by substantial evidence for concluding that Dr. Bartel's and FNP Segler's medical opinions are 'not persuasive.'" ECF No. 14 at 21.

Cooper avers the ALJ did not properly consider Bartel's and Segler's opinions under the rubric provided in 20 C.F.R. § 404.1520c. ECF No. 14 at 21-22. But she misconstrues what 20 C.F.R. § 404.1520c requires. As the Commissioner rightly acknowledges: "the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." ECF No. 15 at 18. The Commissioner's regulations are clear that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, Cooper seeks to impose a greater requirement than the law demands.

Without deferring or giving controlling weight to opinions from treating sources, ALJs must still explain why they accept or reject medical opinion evidence of record. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (requiring an ALJ to "explain his reasons" for a decision but noting "[t]hat he did not follow formalistic rules in his articulation comprises no aspect of fairness or accuracy that [the review] process is designed to ensure"). To provide an adequate explanation, the Commissioner's guidelines suggest an array of relevant factors, *see* 20 C.F.R. §§ 404.1520c(a), c(1)-(5); 416.920c(a), (c)(1)-(5), but specify that the factors of "supportability" and "consistency" are most important. The ALJ here provided ample reasons why she found Bartel's and Segler's opinions unpersuasive, giving particular consideration to the opinions' supportability and consistency. Regarding Dr. Bartel's opinion, the ALJ noted:

> I find the statement of Danny Bartel, M.D. is not persuasive (Exhibits 12F; 18F/1-4). The limitations given are only partly supported by reports of headaches, vertigo,

> impaired balance, falls, and back and leg pain. They are not consistent with Dr. Bartel's own treating notes which have been limited for ongoing falls or balance problems as well as gait problems throughout treatment (Exhibits 24F; 25F; 26F). Neurosurgery evaluations have also not been significant for motor dysfunction to the extent found (Exhibit 27F). Though the claimant has had changes in medication, there is no indication of referrals for more intensive treatment, including botox injections.

Tr. 46. By showing specific areas where Bartel's opinion was either inconsistent or unsupported by the rest of the evidentiary record, the ALJ satisfied her minimal explanatory burden under the Commissioner's guidelines. *See* 20 C.F.R. §§ 404.1520c(a), c(1)-(5); 416.920c(a), (c)(1)-(5).

Likewise, the ALJ properly evaluated FNP Segler's opinion, explaining:

> I find the statement of Ben Segler, F.N.P.-C., is not persuasive (Exhibits 9F; 13F). The limitations given are not well supported, listing depressed mood and testing but not indicating the results of such tests. They are also internally inconsistent with findings that the claimant would not be able to sustain work due to symptoms but not finding specific exertional or non-exertional limitations at all. The inability to sustain work is also not consistent with overall reports of response to medication and physical therapy in addressing headaches (Exhibits 4F/16; 19F). The record has been inconsistent for reports of dizziness and impaired balance as well as significant treatment.

Tr. 46. As with Dr. Bartel's opinion, the ALJ's analysis of FNP Segler's opinion suffices because it clearly shows where the opinion was either inconsistent or unsupported by the rest of the evidentiary record. *Id.*

Cooper acknowledges the ALJ discussed the opinions' supportability and consistency, *see* ECF No. 14 at 21-22, but insists "[t]he ALJ's conclusions on the supportability and consistency of Dr. Bartel's and FNP Segler's medical opinions are not supported by substantial evidence." *Id.* at 22. She then provides several pages of briefing containing substantial evidence for the opposite conclusion: that the opinions of Bartel and Segler were well supported and compatible with the rest of the evidentiary record. *Id.* at 22-27. But such evidence notwithstanding, the voluminous nature of modern administrative records virtually guarantees a claimant could find evidence to

7

contravene an ALJ's decision, no matter how robustly that decision was explained. Indeed, many cases boast evidentiary records with evidence sufficient to support both the ALJ's determination and the exact opposite conclusion. *See Brown*, 192 F.3d at 496 (quoting *Selders*, 914 F.2d at 617) (observing that in such situations, "[c]onflicts in the evidence are for the [Commissioner] and not the courts to resolve") (alteration in original). Because those conflicts are left to the Commissioner, the Court must decline Cooper's invitation to reweigh the evidence of record.

The Court's job is merely to determine whether substantial evidence supports the decision reached. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. As discussed above, the ALJ referenced inconsistencies and unsupportable prognoses in Bartel's and Segler's opinions. *See* Tr. 46. Based on those observations, the ALJ was free to conclude Bartel's and Segler's opinions were unpersuasive. *See Tischler v. Comm'r of Soc. Sec.*, No. 4:20-cv-00721-P-BP, 2021 WL 6496787 at *4 (N.D. Tex. Aug. 30, 2021) (noting ALJs may discredit such evidence so long as they "balance[] its relative persuasiveness against other evidence in the record" and observing that "[t]his holistic approach ensures no single piece of evidence controls over and against the rest of the evidentiary record and aligns with . . . 20 C.F.R. § 404.1520c"), *rec. adopted*, 2021 WL 5832843 (N.D. Tex. Dec. 9, 2021). While Cooper argues for a more robust explication of these findings, a "reasonable mind" could accept the ALJ's explanations to "support [the] conclusion" that the opinions were unpersuasive. *See Ripley*, 67 F.3d at 555. Moreover, it cannot be said that "no credible evidentiary choices or medical findings support the decision." *See Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417). Thus, the undersigned concludes substantial evidence supports the ALJ's decisions regarding Bartel's and Segler's opinions, and reversal is not warranted on that ground. However, as discussed below, the ALJ erred by including exertional limitations in Cooper's RFC unsupported by any medical opinion evidence in the record.

8

### B. The ALJ deviated from correct legal standards and reached an RFC determination substantial evidence does not support.

Cooper says the ALJ committed what has come to be known as a "*Ripley* error," a common analytical oversight named eponymously for the case first addressing the error in detail. *Ripley*, 67 F.3d at 552. A *Ripley* error occurs whenever the ALJ formulates an RFC with no supporting medical opinion evidence or rejects as "unpersuasive" any medical opinion that could lend support to the RFC. *See* 67 F.3d at 557-58. With no medical opinions supporting the RFC, the ALJ is forced to "impermissibly rel[y] on [her] own medical opinions as to the limitations presented." *See* ECF No. 14 at 17 (discussing *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009)). In such circumstances, even if the record contains "a vast amount of medical evidence" showing an impairment exists, no medical professional has contextualized that evidence by opining on the impairment's impact on the claimant's ability to work. *See Ripley*, 67 F.3d at 557. Understood this way, *Ripley* errors arise where the ALJ's conclusion does not logically flow from the asserted premises. No matter how "vast" the evidentiary record may be, ALJs may not examine evidence that only establishes *a condition exists* and then extrapolate from that evidence how the *condition impairs the claimant*. *Id.*

### 1. The ALJ committed a *Ripley* error by formulating an RFC after rejecting all medical opinions of record.

The ALJ committed a *Ripley* error here. Even if the RFC determination seems unobjectionable and the ALJ's reasoning is otherwise innocuous, ALJs are administrative, not medical, professionals. Consequently, the ALJ here erred by imposing vocational limitations to account for Cooper's conditions not based on an expert medical opinion supporting those limitations. *See Ripley*, 67 F.3d at 555. This Court has consistently found reversible error where an ALJ rejects any and all medical opinions that could support the RFC assessed. *See Williams*,

355 F. App'x at 832 n.6 (discussing *Ripley*, 67 F.3d at 557) ("[A]n ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of [the applicant's] claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.") (alterations in original).

The Commissioner maintains that "[e]ven where there is no medical source statement, the 'inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record.'" ECF No. 15 at 12 (quoting *Ripley*, 67 F.3d at 557). This assertion is simultaneously true and irrelevant. It is true in that *Ripley* specified that "[t]he absence of [] a [medical opinion] statement does not, in itself, make the record incomplete." 67 F.3d at 557. Rather, the inquiry remains the same as in all judicial reviews of social security proceedings: does substantial evidence support the Commissioner's decision? *Hollis*, 837 F.2d at 1382. But it is irrelevant in that the record is not devoid of medical source statements, as the record in *Ripley* was. Rather, the record here contains several medical source statements, but the ALJ rejected them all. *See* Tr. 45-47. Thus, there is an "absence" of such a statement here not because the record itself was deficient, but because the ALJ determined the existing statements in the record were all unpersuasive. In such circumstances, substantial evidence is rarely present that could justify the ALJ's RFC, which necessitates an opinion as to the claimant's functional impairments. *See Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) ("Because the ALJ erred by making an RFC determination without medical evidence addressing the effects of [claimant's] impairments on his ability to work, the Commissioner's decision is not supported by substantial evidence.").

The analysis from *Ripley* provides a helpful guide when addressing the substantial evidence inquiry in the absence of supportive medical opinions. As the court elaborated there:

> Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. The absence of such a statement, however, does not, in itself, make the record incomplete. In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record. The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain. From this evidence and [claimant's] testimony [], the ALJ concluded that [claimant] was capable of performing sedentary work . . . The ALJ is responsible for determining an applicant's [RFC]. After considering the evidence, however, we conclude that the ALJ's determination that [claimant] was capable of performing sedentary work was not supported by substantial evidence. The record includes a vast amount of medical evidence establishing that [the claimant] has a problem with his back. What the record does not clearly establish is the effect [claimant's] condition had on his ability to work. The only evidence regarding [claimant's] ability to work came from [claimant's] own testimony.

67 F.3d at 557. To parallel that analysis in this case, the absence of supporting opinion evidence does not render the record incomplete per se. *Id.* Rather, turning to the "existing record," the ALJ disagreed with extensive record evidence to conclude Cooper could "perform light work" with additional limitations imposed. Tr. 39-46.

Similar to the record in *Ripley*, the record here contains a vast amount of medical evidence establishing the severity and scope of Cooper's conditions. Evidence abounds regarding her depression (*see* Tr. 470-474), hypertension and cerebrovascular maladies (*id.* at 354), anxiety and migraines (*id.* at 474-81, 552-54, 627-31, 715-27, 910-62), and back problems (*id.* at 716-724, 727, 920). Indeed, the record here contains more than the record in *Ripley*. Though the record in *Ripley* contained no opinions addressing the functional effects of Ripley's conditions, the record here contains several opinions addressing the functional effects of Cooper's conditions—the ALJ simply found them unpersuasive. Tr. 46. Because the ALJ included functional limitations in the

11

RFC with no medical opinions supporting those limitations, the ALJ committed a reversible *Ripley* error.

### 2. The ALJ's *Ripley* error harmed Cooper.

Considering the contravening evidence in the record and the dearth of opinion evidence supporting the RFC, the Commissioner fails to persuade the error here was harmless. It is worth noting the ALJ imposed straightforward exertional limitations that seem to properly accommodate Cooper's conditions. *See* Tr. 39-41. But ALJs may not "play doctor" by imposing limitations unaccompanied by expert medical opinions, even if the limitations are straightforward, common-sense attempts to account for a claimant's mild symptomology. *Ripley*, 67 F.3d at 555; *Fitzpatrick*, 2016 WL 1258477, at *7-8. While RFC determinations fall into the ALJ's province alone, the ALJ does not enjoy plenary power to impose specific exertional limitations without any medical opinion evidence supporting such limitations. *Id.* Consequently, the Court may not overlook an ALJ's *Ripley* error simply because it agrees with the limitations imposed in the RFC.

"When an ALJ commits a *Ripley* error, remand 'is appropriate only if [the claimant] shows that [she] was prejudiced.'" *Fitzpatrick*, 2016 WL 1258477, at *8 (quoting *Ripley*, 67 F.3d at 557). Because "[p]rocedural perfection in administrative proceedings is not required," the Court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). In this regard, most *Ripley* errors are considered harmful, *see Fitzpatrick*, 2016 WL 1258477, at *8, and this case proves no exception. In determining whether a *Ripley* error was harmful, this Court's analysis in *Fitzpatrick* proves illustrative. There, the Court reasoned that:

> In this case, the evidence before the ALJ showed [the claimant] suffered an affective disorder that, at least in some respects, affected his ability to work. Given this evidence, the ALJ could have reached a different disability determination had she fully developed the record and obtained an expert medical opinion regarding

12

> the effects of [claimant's] mental condition had on his ability to work. Accordingly, the ALJ's failure to obtain medical opinion evidence regarding the effects of claimant's mental impairment prejudiced him and warrants vacating and remanding the Commissioner's decision.

2016 WL 1258477, at *8. Here, the record contained significant evidence indicating Cooper's various conditions would have at least some impact on her ability to work, a point the ALJ acknowledged. *See* Tr. 40-46. Of the two opinions from Cooper's treating sources, one opined that Cooper would be off task 25% of each workday and would miss more than three days of work monthly. *See id.* at 571-74 (FNP Segler's opinion). The other agreed Cooper would be off task at least 25% of each workday and imposed additional physical limitations not included in the ALJ's RFC determination. *See id.* at 597-601 (Dr. Bartel's opinion). Considering such evidence in the existing record, the ALJ could have reached a different RFC conclusion and was not justified in formulating a less-restrictive RFC without a single medical opinion in support. *See Bowles v. Comm'r of Soc. Sec.*, 2021 WL 7451148, at *3-4 (N.D. Tex. Oct. 19, 2021), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022).

Despite the lack of evidence supporting the RFC, the Commissioner insists "[b]ecause the record in this case does not contain uncontroverted evidence of disability, an award of benefits is not appropriate here." ECF No. 15 at 23-24 (discussing *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)). But the question before the Court is not whether Cooper is definitively disabled, but whether the ALJ applied correct legal standards and reached an RFC determination substantial evidence supports. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. Indeed, the reviewing court's job is never to assess a claimant's disability status, reserving that determination for the Commissioner. *Id.* To show reversible error here, Cooper need not prove her disability outright. Rather, she need only show the ALJ improperly included exertional limitations in the RFC without

any supporting medical evidence addressing the limitations imposed. *See Bowles*, 2021 WL 7451148, at *3-4.

The only medical opinions in this case recommended far more restrictive work limitations than the ALJ imposed in the RFC. *See* Tr. 571-601. While the ALJ was free to discredit those opinions, it then "became incumbent upon the ALJ to obtain an expert medical opinion about the types of work tasks that Plaintiff could perform given her impairments." *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015); *see also Bowles*, 2021 WL 7451148, at *3 (quoting *Thornhill*, 2015 WL 232844, at *10) ("While the ALJ could depart from the relevant medical opinions, it then 'became incumbent upon the ALJ to obtain an expert medical opinion' to fill the gap."). Otherwise, without any evidence referencing the limitations in the RFC, "the record does not clearly establish" a basis for the RFC. *Id.* (quoting *Ripley*, 67 F.3d at 557).

The undersigned is mindful that the Court will not reverse the Commissioner's decision where "the substantial rights of a party have not been affected." *Mays*, 837 F.2d at 1364. But Cooper's rights were necessarily affected when the ALJ acted *ultra vires* to impose limitations properly assessed by a healthcare professional, rather than an administrative law judge. *Bowles*, 2021 WL 7451148, at *3-4; *see also Ripley*, 67 F.3d at 557 & n.27 (noting ALJs have "a duty to develop the facts fully and fairly" when the record lacks "reports from qualified medical experts" explaining how a claimant's condition would impact his ability to work, "no matter how small" the effects may be). Accordingly, Judge O'Connor should reverse the Commissioner here and remand the case so the Commissioner can formulate an RFC appropriately grounded in the medical evidence of record.

## IV.  CONCLUSION

Although the ALJ imposed understandable limitations to accommodate Cooper's conditions when formulating the RFC, she rejected all medical opinions of record which spoke to the effects of Cooper's conditions on her ability to work. In so doing, the ALJ deviated from applicable legal standards and reached a decision substantial evidence does not support. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further administrative proceedings in which the Commissioner either reevaluates the existing medical opinions of record or solicits additional medical opinions that address the effects Cooper's conditions will have on her ability to perform meaningful work activities.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on July 15, 2022.

                                                                  Hal R. Ray, Jr.
                                                                  UNITED STATES MAGISTRATE JUDGE